UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MLB PLAYERS, INC.<br><br>        Plaintiff,<br><br>        v.<br><br>PITTSBURGH ASSOCIATES d/b/a<br>Pittsburgh Pirates Baseball Club and<br>SHEETZ, INC.<br><br>        Defendants. | **COMPLAINT FOR DAMAGES AND<br>DECLARATORY AND INJUNCTIVE<br>RELIEF**<br><br>No. |

## COMPLAINT

Plaintiff MLB Players, Inc. alleges as follows:

### INTRODUCTION

1.  This action for injunctive relief and damages is brought by plaintiff MLB Players, Inc. ("MLBPI"), a Delaware corporation, against the Pittsburgh Pirates Baseball Club ("Pirates") and Sheetz, Inc. ("Sheetz"), a Pennsylvania-based grocery store chain, based on those defendants' knowing and deliberate misappropriation for commercial purposes of the names, images, and likenesses of multiple Major League baseball players ("Players"). Despite repeated warnings from MLBPI as assignee of the Players' group licensing rights, the Pirates and Sheetz have published and appropriated for their own commercial benefit the names, images, and likeness of multiple Players in a joint promotional campaign without obtaining a license or other authorization for such use from MLBPI or from the Players' union, the Major League Baseball Players Association ("MLBPA").

2.  Defendants wrongfully exploited those Players' names, images, and other identifying information as part of defendants' joint promotion, on multiple social media platforms, of a sponsorship agreement between the Pirates and Sheetz that allows the Sheetz name to be publicly displayed on a patch on the baseball uniforms of Players employed by the Pirates. Although the Pirates had the right to license space on its players' uniform's patches to a

1

corporate sponsor such as Sheetz, the Pirates and Sheetz did not and do not have the right, without a license from MLBPI, to use the names, images, or likenesses of three or more Players in a calendar year ("Group Rights") in any marketing campaign, either to promote the Pirates/Sheetz sponsorship agreement or for any other commercial purpose. Nevertheless, knowing they did not have the required license, the Pirates and Sheetz used videos and images of multiple individual Players in violation of MLBPI's Group Rights, in an effort to increase the consumer appeal of Sheetz's stores, brand, and products and to increase the commercial value of the patch sponsorship agreement that the Pirates reached with Sheetz. This use of the Players' name, image and likeness rights without written consent from MLBPI violates Pennsylvania's statutory and common law "rights of publicity."

3.   MLBPI brings this action to recover compensatory and punitive damages, and disgorgement of profits for defendants' unauthorized uses of the Players' names, images, and likenesses, to obtain an accounting of defendants' unlawful sales and profits, and to prevent defendants' further willful misappropriation of those Players' and other MLBPA members' names and identities.

## THE PARTIES

4.   Plaintiff MLB Players, Inc., ("MLBPI") is a Delaware corporation with its principal place of business in New York, New York. MLBPI is the corporate subsidiary of the Major League Baseball Players Association ("MLBPA"), which represents major league baseball players in collective bargaining with Major League Baseball ("MLB") and in other matters affecting the Players' economic and privacy interests. MLBPI, as assignee of the Players' Group Rights, negotiates and enters into group licensing agreements with companies throughout the world, to authorize when appropriate the use the MLBPA-represented athletes' identities, names, and likenesses in commercial products and services under specifically negotiated terms and conditions.

5.   Defendant Pittsburgh Associates is a limited partnership under the laws of Pennsylvania. Its general partner is Pittsburgh Baseball Holdings, Inc., a Pennsylvania

corporation with its principal place of business in Pittsburgh, Pennsylvania. Pittsburgh

Associates does business as the Pittsburgh Pirates Baseball Club ("Pirates"), a Major League

Baseball team based in Pittsburgh, Pennsylvania.

6.  Defendant Sheetz, Inc. ("Sheetz") is a Pennsylvania corporation with its principal

place of business in Altoona, Pennsylvania. Defendant operates more than 700 Sheetz-brand

store locations in Pennsylvania, Maryland, North Carolina, Ohio, Virginia, and West Virginia, as

well as distribution and other facilities, and employs more than 20,000 people across its

operations.

7.  Sheetz uses social media platforms such as Facebook, Instagram, and X.com

(formerly Twitter) to promote its products and services. Sheetz targets its marketing to customers

throughout Pennsylvania, as well as in the other five states in which it operates.

## JURISDICTION AND VENUE

8.  Because there is complete diversity between the parties in this action, the Court has

jurisdiction over MLBPI's claims under 28 U.S.C. §1332. The amount in controversy exceeds

the jurisdictional minimum of the federal courts.

9.  Venue in this forum is proper pursuant to 28 U.S.C. §1391(b)(1) because all

defendants reside in the Western District of Pennsylvania, and pursuant 28 U.S.C. §1391(b)(2)

because a substantial part of the events or omissions giving rise to MLBPI's claims occurred in

the Western District of Pennsylvania.

## FACTUAL ALLEGATIONS

10.  Professional baseball players devote an enormous amount of time and effort to

developing the specialized skills necessary to succeed at the professional level. For the small

percentage of players who succeed in reaching the highest level of the sport by playing major

league baseball, one of the important rewards for their years of effort and their professional

accomplishment is the establishment of a well-recognized personal and professional identity.

11.  Major league baseball players are able to benefit from the approved use of their

carefully developed public personas and identities to sponsor and support causes and institutions

that are meaningful to them, and to encourage their fans and others who have come to admire their accomplishments to support those causes and institutions as well. Those Players are also able to use their public personas and identities for commercial benefit, and for the benefit of their union, the MLBPA, through such means as licensing and promotional agreements negotiated by MLBPI.

12.   The right of publicity protects the ability of well-known individuals, including MLBPA members and other professional athletes, to control the commercial use of their personas, including through the marketing and sale of products whose appeal is enhanced by an association with those individuals. As the Supreme Court has explained, the right of publicity serves the "straightforward" purpose "of preventing unjust enrichment by the theft of good will." *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 576 (1977). The right of publicity also "provides an economic incentive for [celebrities] to make the investment required to produce a [work] of interest to the public." *Id.* at 563. For professional athletes, the ability to control the commercial use of their names and likenesses provides an important return on substantial career investments. At the same time, it enables those athletes to avoid being associated with particular commercial products or works that they do not wish to be perceived as supporting or endorsing.

13.   MLBPI is the exclusive group licensing agent for all current active MLB players. In that role, MLBPI protects the MLBPA members' hard-earned celebrity from being exploited for unauthorized commercial use and enables those Players and their union to benefit economically and otherwise from the unique commercial value created by the Players' celebrity and by their collective support of various forms of marketing, promotional activity, products, goods, and services. Each active MLB player has assigned to MLBPA, and in turn to MLBPI, the exclusive worldwide right to use, license, and sublicense that player's name, number, nickname, likeness, signature, biographical sketch, playing record, and other personal attributes (in any form, media or size, including video, digital or otherwise) for purposes of any commercial marketing, promotional activity, product, or service in which three or more such players are

identified over the course of a calendar year. Any use of the protected attributes of three or more Players in a calendar year in connection with marketing, promotional activity, products, services, or other commercial activities must be licensed through and authorized by MLBPI.

14. As the exclusive group licensing agent for current MLB players, MLBPI regularly negotiates group licensing agreements authorizing use of the Players' names and likenesses in a range of commercial products and services. Through these agreements, MLBPI ensures that those players are associated only with products they choose to support; that the commercial value of those Players' names and likenesses is neither tarnished nor diluted through misuse or overuse; and that MLBPI and the Players receive fair compensation when the Players' personas are used to increase the consumer appeal of a product or service. The payments required by such licensing agreements are owed and made to MLBPI, which uses the revenue generated thereby to cover program expenses, support numerous MLBPA programs including the Players' charitable foundation, and make annual distributions (subject to MLBPA Executive Board approval) to Players.

15. The most recent collective bargaining agreement between MLBPA and the 30 Major League Clubs (the "Basic Agreement"), effective March 10, 2022, includes a provision allowing all 30 Major League baseball clubs, including the Pirates, to license to third-party commercial sponsors the right to place those sponsors' names, logos, or marks on each team uniform.

16. Separately, MLBPI and MLBPA (collectively, "MLBPI/A") has also granted MLB—specifically the Office of the Commissioner of Baseball and MLB Advanced Media LP—a non-exclusive, nontransferable, non-assignable license to use the union' trademark and MLBPI/A's assigned rights, including the group name, image, and license rights of active MLB players, for the limited purpose of certain sponsorship deals, pursuant to designated terms. The current Promotional License Agreement ("PLA") between MLBPI/A and MLB was executed on March 30, 2023, with an effective date of October 1, 2022.

17. Although the 30 MLB clubs are not parties to the PLA, that agreement authorizes

MLB to sublicense the rights assigned to it under the PLA according to the specific terms of the agreement. Pursuant to the PLA, MLBPI/A and MLB negotiated a schedule of fees that would be required to be paid to MLBPI/A by any MLB sublicensee, i.e., any MLB club, for the use of MLBPI/A's rights and trademarks in promotions related to the uniform patch sponsorships. This "Uniform Patch Sponsor Fee" varies based on the size of the team's media market. The MLBPI/A and MLB agreed that the fee for any sponsor of the Pirates' uniform patch to license the group name, image, and likeness rights for promotions was set at $100,000 annually.

18.   Without obtaining a license directly from MLBPI/A or a sublicense from MLB in accordance with the terms of the PLA, any MLB team may agree to have a uniform patch sponsor place its logo on that team's players' uniforms, but the team does not have the right to use MLBPI's Group Rights, including the protected attributes of three or more of Players in connection with marketing or promoting the sponsorship or the sponsor's products or services in a single calendar year, without obtain a license or other express authorization from MLBPA/I.

19.   On June 21, 2024, the Pittsburgh Pirates announced that the team had entered an agreement with Sheetz to make Sheetz its first uniform patch sponsor.

20.   This affiliation with the Pirates and Pirates players has considerable economic and commercial value to Sheetz. Sheetz President and CEO Travis Sheetz was quoted in an article announcing the sponsorship agreement on the MLB website as saying, "If you take our market area and the Pirates' fanbase and overlay those two, you'd be hard pressed to find many gaps."[1] He continued: "For sure, we think from a customer standpoint, a brand-awareness standpoint and a brand reputation standpoint, this is a great connection."

21.   In conjunction with this announcement on June 21, 2024, the Pirates and Sheetz have used the names and likenesses of numerous current MLB players to increase the commercial appeal of Sheetz's stores and brand, and thus the commercial value of the sponsorship agreement to the Pirates. MLBPI has never entered into a group licensing agreement for promotion of uniform patch sponsorship with defendants Pirates or Sheetz. MLBPI has not

---

[1] Jim Lachimia, *Pirates Announce Jersey Patch Deal with Sheetz*, MLB.com (June 21, 2024) https://www.mlb.com/news/pirates-announce-jersey-patch-deal-with-sheetz.

COMPLAINT

granted licenses to or otherwise authorized defendants' commercial exploitation of MLBPA's members' rights of publicity for use in promoting Sheetz's brand or uniform patch sponsorship.

22.  On June 21, the Pirates and Sheetz jointly published a series of posts on each of their Instagram accounts promoting the partnership and the Sheetz brand.[2] For example, one post, captioned by the Pirates Instagram account "Two iconic Pittsburgh brands coming together. Welcome to the family, @sheetz! 💛" includes *eight* images of Players and uniforms with the new Sheetz patch and features Major League baseball players and MLBPA members Paul Skenes and Oneil Cruz. Both players are tagged in the post, linking directly to those players' own Instagram accounts.[3] On the same day, another Instagram post jointly published by the Pirates and Sheetz included images of *five* Players and MLBPA members: Andrew McCutcheon, Oneil Cruz, Nick Gonzales, Carmen Mlodzinski, and Connor Joe.[4] All the images prominently featured the Sheetz logo and tagged Sheetz's Instagram account, as well as the social media accounts of the depicted Players. Many similar Instagram posts, all jointly published by the Pirates and Sheetz, featured the names, images, player numbers, and videos of these and other Players, including Bryan Reynolds, Jared Jones, Colin Holderman, Jack Suwinski, and Yasmani Grandal.

23.  Both defendants published similar content on X, formerly Twitter, and on Facebook. For example, at 7:25 a.m. on June 21, 2024, the Pirates posted on X with the same text as used in the introductory Instagram post— "Two iconic Pittsburgh brands coming together. Welcome to the family, @sheetz! 💛"—this time featuring an image of MLBPA member David Bednar.[5] At 7:51 a.m., Sheetz's official X account reposted that post, adding "Raise the Jolly Roger! ⚾🏴💥." At 9:08 a.m., the Pirates X account posted a video and images from a Sheetz-sponsored event with a Little League team, hosted by Major League

---

[2] Instagram's "Collab" feature allows the creator of a post to invite another Instagram account to be a collaborator on it. Once the invitation is accepted, the post appears on both accounts and is promoted to both accounts' followers.
[3] https://www.instagram.com/p/C8ezJxKsdfm/?igsh=MTVjOHl1cnJuOXkxdw==
[4] https://www.instagram.com/p/C8fuNL8sbtq/?igsh=dWZlMnc1c2E5ZDU=
[5] https://x.com/pirates/status/1804158656742568199?s=46

COMPLAINT

players Colin Holderman and Oneil Cruz, including pictures of the players outside a Sheetz store.[6] More images from that trip, including pictures of the players shopping in a Sheetz store, were posted by the official Pittsburgh Pirates Facebook account, tagging Sheetz.[7]

24.   Defendants published at least 20 different posts on June 21, 2024, across multiple social media platforms featuring multiple pictures and videos using Player names, images, and likenesses to promote the Sheetz brand and products. These posts remain up and are publicly available for viewing on each platform and have caused and are continuing to cause irreparable harm to MLBPI and the Players.

25.   Defendants' social media posts at issue have been viewed substantially more than a million times and have generated tens of thousands of interactions from social media users. The defendants' joint Instagram post introducing the partnership and featuring images of Paul Skenes and Oneil Cruz has over 30,000 likes. The Pirates' similar post on X, featuring an image of MLBPA member David Bednar, shows that it has had one million views alone, as well as over 600 reposts or quotes and over 3,000 likes. Although Instagram does not show view counts, the Pirates official account, @pittsburghpirates, has more than 830,000 followers; the Sheetz account, @sheetz, has over 100,000. These widely viewed images serve to increase the commercial appeal of Sheetz's stores and products generally, and to misleadingly suggest a direct endorsement by the players themselves of Sheetz.

26.   Because these and other promotional materials over the course of a single calendar year displayed the names or likenesses of three or more current MLB players in the context of an advertising campaign for a uniform patch sponsor, Sheetz and the Pirates were required to have obtained a group license from MLBPI for those uses. Neither defendant obtained a license from MLBPI before using the names and likenesses of current MLB players in promotional posts advertising Sheetz and the patch partnership, nor did they obtain such a

---

[6] https://x.com/pirates/status/1804184539167691133?s=46
[7] https://www.facebook.com/Pirates/posts/pfbid02vxaPQ3mm8QaooxnaS9wnUXbaqup
XsXThqbiLFhcLQiW6oX6f3ch1YEHpcPnxmEtel?rdid=Km67T7BAXdiiS7IK

license thereafter.

27.   Defendants' unauthorized use of the names, images, and likenesses of three or more players in promoting the Sheetz patch sponsorship has unjustly enriched defendants, by providing commercially valuable advertising materials to Sheetz and, on information and belief, by inflating the value of the patch sponsorship the Pirates were able to offer Sheetz or could offer future sponsors.

28.   Defendants' infringement of MLBPI's Group Rights also caused MLBPI to suffer actual economic injury in the form of lost licensing revenue and deprivation of the commercially valuable right to control the commercial use, and thus to protect and benefit from the economic value, of its Group Rights and the Players' publicity rights. Defendants' violations directly affect the ability of MLBPI to receive the benefit of its publicity rights in other patch sponsorship deals. All 30 MLB teams can enter into such patch sponsorship agreements, and many already have. Defendants' unlicensed use of MLBPI's Group Rights threatens MLBPI's ability to enter into licenses with the other teams for promotion of their patch sponsorships.

29.   Defendants' violations of MLBPI's group licensing rights are intentional and willful.

30.   On or about June 3, 2024, well before publicizing the patch sponsorship and before the Pirates held the photoshoot for the social media promotions, representatives of the Pirates contacted OneTeam, which represents MLBPA and other professional sports unions with respect to certain sponsorship deals and other purposes, to discuss the upcoming sponsorship announcement. Representatives of OneTeam and MLBPI reminded the Pirates in writing on June 3, 2024, that the use of three or more MLB players' names, or likenesses in support of a paid sponsor during a single calendar year, including in the patch announcement, marketing, or advertising, would be a violation of MLBPI's rights without a group license.

31.   Representatives of MLBPI and the Pirates continued to discuss the potential use of Group Rights in conjunction with the Pirates' patch announcement in early June 2024. On information and belief, representatives of the Pirates also communicated with representatives of

MLB, who informed the Pirates that announcing the patch sponsorship with names, images, and licenses of three or more players would violate MLBPI's Group Rights absent a license.

32.   Despite knowing that MLBPA held the Group Rights of the Pirates' Players and that neither the Pirates or Sheetz had obtained the required license from MLBPI, defendants began developing promotional materials for the sponsorship launch that involved many more than three Players' names, images, and likenesses, including by conduct a photoshoot with many Players whose images were used throughout the campaign.

33.   Following defendants' publication of the Sheetz patch partnership announcement posts, representatives of MLBPI have repeatedly informed both defendants in writing that they were violating MLBPI's exclusive group licensing rights through its promotions of Sheetz. On July 18, 2024, MLBPI sent letters to each defendant demanding that it take immediate steps to remove the offending posts and to compensate MLBPI for defendants' previous and ongoing violations of MLBPI's Group Rights, and that defendants pay to license such Group Rights from MLBPI for future use. MLBPI also sent defendant Sheetz, in response to Sheetz's request, a non-exhaustive list of offending posts.

34.   The parties did not reach an agreement to license the MLBPI's group rights to defendants for the Sheetz promotional campaign. Nevertheless, defendants have not taken any steps to remove the offending posts from their social media platforms, and so the images depicting many more than three or more MLBPA's members remain on numerous posts promoting Sheetz's brand and products.

35.   MLBPA is informed and believes and thereon alleges, that defendants at all relevant times knowingly appropriated the names, images, and likenesses of three or more Players, the exclusive right to license which has been assigned to MLBPI, and that defendants willfully, wantonly, and outrageously disregarded MLBPI's rights in using the Players' names, images, and likenesses in the promotion of Sheetz's brand and products, without MLBPI's consent or

authorization an in violation of MLBPI's exclusive Group Rights.

## FIRST CAUSE OF ACTION

42 Pa. Cons. Stat. § 8316

36.  MLBPI re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37.  Pennsylvania Statutes § 8316 provides a cause of action to be brought "[a]ny natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose without the written consent of such natural person or the written consent of" any firm or corporation authorized to license the person's name or likeness "to enjoin such unauthorized use and to recover damages for any loss or injury sustained by such use." 42 Pa. Cons. Stat. § 8316(a); (b)(4).

38.  Major League baseball players' names and likenesses have commercial value.

39.  Defendants Pirates and Sheetz knowingly used the names, images, and likenesses of three or more Players for the purposes of promoting and advertising Sheetz's stores, brand, products, and services without prior written consent.

40.  Because MLBPI is the exclusive group licensing agent for current MLB players and has been granted the exclusive right to use, license, and sublicense currents Players' names, images, and likenesses for the purposes of any commercial marketing or promotional activity in which three or more players are identified in a calendar year, Section 8316 required the Pirates and Sheetz to obtain MLBPI's prior written consent before using the Players' names, images, and likenesses in its social media accounts.

41.  Defendants' actions as alleged herein are outrageous, malicious, and in willful violation of MLBPI's rights.

42.  For their violations of Section 8316, defendants are liable to MLBPI for the compensatory damages sustained by MLBPI and for punitive damages, and MLBPI is entitled to

injunctive relief.

## SECOND CAUSE OF ACTION

Violation of Common Law Misappropriation of Identity

43.  MLBPI re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

44.  In addition to a statutory right, Pennsylvania recognizes a common-law right of publicity that provides individuals with a cause of action for the invasion of privacy by misappropriation of their name and likeness.

45.  Defendants Pirates and Sheetz knowingly and intentionally violated the common law privacy rights of current MLB players, which those players assigned to MLBPA and MLBPI for purposes of group licensing, by using the names, photographs, and likenesses of at least three current MLB Players for the purposes of advertising and promoting Sheetz's brand, stores, products, and services.

46.  These names and likenesses have commercial value, as the names and images of well-known Major League baseball players.

47.  Defendants' actions as alleged herein are outrageous, malicious, and in willful violation of MLBPI's rights.

48.  For their violations of MLBPI's assigned rights, defendants are liable to MLBPI for compensatory and punitive damages, as well as accounting of all sales and profits relating to the misappropriation of Player likenesses, and disgorgement of all profits generated by virtue of the unauthorized uses.

## THIRD CAUSE OF ACTION

Unjust Enrichment

49.   MLBPI re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

50.   Defendants have been unjustly enriched at the expense of MLBPI as a result of the unlawful conduct alleged herein, including as a result of defendants' unauthorized

commercial use of the publicity rights held by MLBPI in order to generate increased profits and value to the brand of Sheetz, and increased value to the patch sponsorship rights held by the Pirates.

51.   Under common law principles of unjust enrichment, defendants should not be permitted to retain the benefits obtained through its wrongful conduct, and it would be unjust for defendants to be allowed to do so.

52.   MLBPI seeks full restitution of defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.   Preliminary and permanent injunctions requiring defendants to cease and desist from engaging in the unlawful conduct complained of above;

2.   Actual damages under 42 Pa. Cons. Stat. § 8316, and such other relief as provided by the statutes cited herein;

3.   Compensatory and punitive damages in an amount to be determined at trial;

4.   An accounting and disgorgement of all profits associated with the promotion of Sheetz's patch partnership through the names, images, and likenesses of Players.

5.   An award of reasonable attorneys' fees, costs, and disbursements; and

6.   Such other and further relief as this Court deems just and equitable.

COMPLAINT

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial on all issues as to which a jury trial is available.


Respectfully submitted,


<u>s/Michael J. Healey</u>
PA I.D. #27283
P.O. Box 81918
Pittsburgh, PA 15217
Phone:  412-760-0342
Email: mike@unionlawyers.net



Dated: August 14, 2024

**ALTSHULER BERZON LLP**

<u>/s/Michael Rubin</u>
Michael Rubin*
Robin S. Tholin*
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: 415.421.7151
Fax: 415.362.8064

*Pro hac vice application forthcoming*

*Attorneys for Plaintiff MLBPI*

COMPLAINT